**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-09-027-TUC-CKJ |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| RENE J. BRITTON, | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's Motion to Reconsider Motion to Suppress Statements [Doc. 76]. Defendant asks this Court to reconsider its denial of Defendant's Motion to Suppress Statements [Doc. 33] regarding statements made by Defendant to Federal Bureau of Investigation ("FBI") agents on October 30, 2007.

An evidentiary hearing was held on October 4-5, 2010 regarding this matter. The Government presented testimony from FBI Supervisory Special Agent ("SA") Jeffrey L. Coburn and SA Alan K. Distajo. Defendant presented testimony from Staff Sergeant Vernon Walton, Mr. Sergio Murueta, and Defendant Rene J. Britton. The Court denied Defendant's Motion to Suppress for reasons stated on the record.

*Analysis*

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have

been brought to the attention earlier with reasonable diligence." LRCiv. 7.2(g)(1).[1] Defendant relies on the recent Ninth Circuit decision in *United States v. Wright*, 625 F.3d 583 (9th Cir. 2010), to justify the current motion. Nothing in the *Wright* decision altered the existing test for determining whether Defendant Britton's statements were made during a custodial interrogation, or otherwise involuntarily. *See Wright*, 625 F.3d at 601-04. Rather, the Ninth Circuit took issue with the district court's lack of explicit fact finding in its Order denying Wright's motion to suppress. *Id.* at 602.

In the instant case, the Court made explicit findings on the record, expressly "[v]iewing the 'totality of the circumstances' from the perspective of a reasonable person in Defendant's position" and determining that Defendant's statements were made during a non-custodial interrogation. *U.S. v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004). At the close of argument during the October 5, 2010 hearing the Court stated as follows:

> All right, thank you, Ms. Vietor. And I appreciate the briefing and argument of counsel. Both sides made very thorough presentations to the Court. And relating to the burden of proof, it appears that the – that the burden of proof and persuasion rests on the person seeking to suppress evidence. In looking at that first *Bassignani* case,[2] which has been, obviously – the holding was overruled in the later case, but this particular issue was not discussed in the second case. But it just appears that that *United States versus Davis* case,[3] which is cited in that opinion, appears to be a reasonable interpretation of the burden of proof, that the person seeking to suppress evidence normally has the burden of production and persuasion. So the Court will find that the burden of proof is on the defense in this particular case.
>
> In reviewing everything – let me go through the five factors, but the Court is mindful that this is a – the Court looks at the totality of the circumstances. This is a fact intensive inquiry, and just reading from the new *Bassignani* case:
>
>> A defendant is in custody if a reasonable innocent person in such circumstances would conclude that after brief questioning, he or she would not be free to leave. The custody determination is objective, and is not based upon the subjective views of the officers or the individual

---

[1] "With regard to Forms of Papers and Motions, see Rules 7.1 and 7.2 of the Local Rules of Civil Procedure." LRCrim. 12.1.

[2] *United States v. Bassignani*, 575 F.3d 879 (9th Cir. 2009).

[3] *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir.1986).

- 2 -

being questioned. The Court must examine the totality of the circumstances surrounding the interrogation.

I think the *Craighead* case[4] and the *Bassignani* case are both instructive in giving the Court some of the parameters as to how to look at these five factors. So let me go through the five factors.

The language used to summon the individual. Here it's clear that the defendant did not voluntarily come to the CID building. He came at the direction of his commanding officer. So the Court notes those facts. He was – so in other words, he had to go – I think in the military setting, being a military person when your commanding officer tells you to go to a certain location, you have to go. So there's no question here that he had to go. He didn't really have a choice as to whether or not to go to the CID office. It's also clear that he was told to come to the office by his staff sergeant, who he was very familiar with. Sergeant Walton did not know what this was about, did not know really anything about why Mr. Britton was being summonsed there, so he was basically not giving the defendant any information about why he was to go to the CID office. So that militates in favor of – of this not being a coercive setting in the sense of being told that the police are going to interview you, and you have to – you have to submit to this interview. So the language used to summon the individual was definitely the type of language where Mr. Britton felt that he had to go. So he did not voluntarily go to the CID office. However, once he did arrive there, it's undisputed that he was told – and many of the facts, I agree with both sides, are not disputed in this case. But it's undisputed that he was told that he had the right to leave. He did not have to submit to an interview, and he was told this by the F.B.I. agents. So at that point he is being told that he has these choices. So – and that this has nothing to do with the military. He's also told that, that the military is not ordering him to be interviewed. So he does receive that information from the F.B.I. agents as soon as he arrives. So the Court finds that the first factor, the language used to summon the individual, militates in favor of a finding of custody, primarily because this is on a military base, he's being summonsed by his superior officer to come to the CID. It's mitigated somewhat in favor of the government by the fact that I've discussed, that the particular person summoning him did not tell him why, he had no idea why he was going to the CID, and was later told exactly, as the agents testified, that he was absolutely free to leave, did not have to sit down for an interview. So the Court finds that that mitigates that factor somewhat in favor of the government, but overall the Court finds that the first factor does show the defendant was in custody.

The second factor, the extent to which the defendant is confronted with evidence of guilt. In looking at the case law, again, both cases rely on the *Kim* case.[5] That's where these factors come from. The Court finds that this factor militates in favor of a finding of the defendant not being in custody. The agent testified, and the Court finds that – the agents to be credible, that the defendant other than being shown some of the images – and this was done after he had admitted looking at child pornography. Other than being shown some of the images, there was no sort of – and I don't think that was even confrontational

---

[4]*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008).

[5]*United States v. Kim*, 292 F.3d 969 (9th Cir. 2002).

- 3 -

based on the testimony that was presented, that there was – this factor militates in favor of the government. It was clear that the interview was conducted in a civil manner. At one point the agent – according to the defendant, there was some aggravation in his voice. He became a little heated. And I'm just – these were quotes from the defendant. But there was no evidence presented that the defendant was confronted with evidence of guilt in the sense that would militate in favor of a finding in custody. Here we don't have a situation where the interrogator adopts an aggressive, coercive, or deceptive tone, confronted him about lying, said they knew the truth – I'm just giving some examples that are cited in this *Bassignani* case. They did not attempt to confront the defendant, challenge him about his statements, but were merely questioning him and clarifying the extent of his involvement in the allegations. So the Court finds that that second factor militates in favor of a finding that the defendant was not in custody, and the Court further finds that merely questioning somebody about allegations is not – doesn't mean that – that the defendant is being confronted with evidence of guilt. It seems like there needs to be more than just talking to somebody about the allegations.

As to the third factor, the physical surroundings of the interrogation, the Court is – again looks at *Craighead* where the Court found – that was a very different case in the sense the defendant was in his own home, so the Court looks specifically at home interrogations. Here we have a defendant not in his own home. He's at the CID office. He's not in an F.B.I – not in a law enforcement office, but a law enforcement related office in the sense that CID is where law enforcement activities take place. He's obviously separated from others. There's no other people around him. But it is different from the *Craighead* case where there was actually an armed officer with his gun displayed standing at the door of a storage room that the defendant was in, in his own home, and the emphasis was made, well, where would he go if he was to leave this interview? So this is a little different situation. No one was affirmatively excluded, as in *Craighead* where someone was actually excluded. I believe Craighead's mentor, or someone who was there with him at the time was not allowed to be in the room. So this is factually different from that. This was not in the defendant's own home, but at a fairly neutral setting, somewhat familiar to the defendant. It was on base. He was escorted by his NCO, who he knew well. These agents were in plain clothes. They did not – the weapons were at least visible on one of the agents, but holstered the whole time. They were never drawn. So the Court finds that the – the physical surroundings of the interrogation - again, I have evidence of the way the room looked - militates in favor of a non-custodial setting. The Court is also mindful of the facts in the *Bassignani* case where a person was interviewed in a conference room, in a business setting, and the Court found that that was a non-confrontational, or a non-custodial type of setting. I am mindful of the fact that in the *Craighead* case they do talk about the fact that when a suspect is told that he's free to leave but yet his home is being – is, as they say, the locus of police activity, where is he going to go, that that's a factor the Court is also considering. But given the particular facts of this case where the defendant was told that his dorm room – apartment or dorm room was being searched at the same time of the interview, the Court is aware of that fact but finds that – still that the physical surroundings of the interrogation given the fact the defendant was being interrogated at a different location on the base, that still that – the physical surroundings of the interrogation show a non-custodial setting.

- 4 -

> The duration of the detention in this Court's mind clearly supports a finding of the defendant not being in custody. The interview was approximately anywhere from 45 minutes to 60 minutes long, and the case law clearly shows that that is not the type of duration that would support a finding of a defendant being in custody. The degree of pressure applied to detain the individual, the defendant was clearly told he was not under arrest, he was free to leave. Really, when you look at the case law, it doesn't appear to me that there was really any pressure applied to detain the individual above and beyond being asked by a law enforcement officer to talk about some allegations. That is not the kind of pressure that the courts in this Court's mind are talking about when they talk about the degree of pressure applied to detain the individual. There's no dispute that he was affirmatively told that he was – Mr. Britton, that he was free to leave, could leave at any time, and did not even have to submit to an interview. Further, I mean, the evidence is clear that after the interview he walked out of the room, and was in fact free to go, and did in fact go. And from the defendant's own testimony, he indicated that he – he decided on his own that once the interview shifted to – other than the basic questions about – the preliminary questioning, once the questions started about the actual allegations, that he in his own mind decided not to stop the interview. He felt that he had to finish the interview. But this was not because of anything the agents were doing or not doing in conducting the interview. So these were his own, perhaps, subjective feelings about wanting to stay, or feeling he had to stay, but this is not based on something that law enforcement did or didn't do. So in looking at the totality of the circumstances, the Court finds that the – that this was a non-custodial interview, that the defendant was not in custody, therefore the government agents did not have to read the defendant his Miranda warnings prior to interviewing him.
>
> The Court, again, has evaluated the credibility of the witnesses. I don't think there are disputes as to the actual facts here, unlike some cases. But in evaluating the credibility of the agents, the particular facts in this case, the Court agrees with government counsel that this case is really more like the *Bassignani* case as far as – although it's not specifically – each case is unique, but it – it appears to be closer to that particular case than the – than the *Craighead* case. Further, relating to voluntariness, the Court finds that the statement was voluntarily made. There were – and this was – there's just no evidence that the defendant was threatened, promised. There's nothing about the defendant's mental health, or that he was impaired. There's nothing in this Court's mind to show that the defendant didn't voluntarily make the statements. So apart from the inquiry of whether he was in custody or not, he clearly was voluntarily speaking to the officers. I mean, it was undisputed that the tone was civil. The most we have is at one point the agent's voice becoming a little heated, that there was aggravation in the agent's voice at one point, but nothing to show – no evidence to show the defendant was threatened, or promised anything during this interview.
>
> So the Court finds that the statement was voluntary. So that's the Court's ruling on the motion to suppress.

Hr'g Tr. 10/5/10 at 143:22-152:9. The specific findings made by this Court, are exactly what the Ninth Circuit Court of Appeals determined to be lacking in the district court's denial in *Wright*. *Wright*, 625 F.3d at 602. As such, Defendant's motion is without merit.

- 5 -

1 | Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Reconsider Motion
2 | to Suppress Statements [Doc. 76] is DENIED.
3 | DATED this 18th day of January, 2011.

*Cindy K. Jorgenson*
United States District Judge